INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 2-00102

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

Case No. 04-3470

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

OCT 2 6 2005

LEONARD GREEN, Clerk

| | |
|---|---|
| NATHANIEL LIVINGSTON, JR., )<br>)<br>Plaintiff-Appellee, )<br>)<br>v. )<br>)<br>CHARLES LUKEN, Mayor, et al. )<br>)<br>Defendants, )<br>)<br>CITY OF CINCINNATI; CINCINNATI )<br>POLICE DIVISION; JOHN SHIREY, Former )<br>Cincinnati City Manager in his individual and )<br>official capacities; THOMAS H. STREICHER, )<br>JR., in his individual and official capacities; )<br>PORTER EUBANKS, Cincinnati Police Officer )<br>in his individual and official capacities, )<br>)<br>Defendants-Appellants. )<br>) | ON APPEAL FROM THE<br>UNITED STATES DISTRICT<br>COURT FOR THE SOUTHERN<br>DISTRICT OF OHIO |

BEFORE: GUY, BATCHELDER, and GILMAN, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge.  Defendants-Appellants Officer Porter Eubanks, Cincinnati Police Chief Thomas Streicher, and Cincinnati City Manager John Shirey appeal the magistrate judge's denial of their motion for judgment on the pleadings with regard to Plaintiff-Appellee Nathaniel Livingston, Jr.'s constitutional claims against them in this action brought under 42 U.S.C. § 1983.  Appellants (and other City employees and officials) moved to dismiss pursuant to Fed. R. Civ. P. 12(c), arguing that Livingston's complaint failed to state a claim against them and that, even if it did, they were entitled to qualified immunity.  The magistrate judge

granted Appellants' motion on some claims, but denied it with respect to Livingston's Fourth Amendment unreasonable seizure and First Amendment retaliation claims. Because we conclude that Livingston's amended complaint adequately pleads violations of his Fourth Amendment rights by these Appellants, and—read generously—minimally pleads claims of retaliation by these Appellants in violation of his First Amendment rights, and that those factual allegations, construed in the light most favorable to the plaintiff, allege violations of clearly established constitutional rights, we affirm the district court's order denying qualified immunity as to these claims.

## BACKGROUND

### I. General Facts and Procedural History

On July 2, 2002, Livingston filed an amended complaint against several defendants, in which he alleged that on March 19, 2001, while his 1987 Nissan Maxima was parked in front of his home at 952 Cleveland Avenue, a fluorescent-orange "Abandoned Vehicle Sticker" was affixed to the automobile. Livingston promptly removed the sticker. Four days later, his vehicle was towed to an impound lot and subsequently destroyed, allegedly under the authority of Ohio Revised Code § 4513.63, which provides:

> "Abandoned junk motor vehicle" means any motor vehicle meeting all of the following requirements: (A) Left on private property for forty-eight hours or longer without the permission of the person having the right to the possession of the property, on a public street or other property open to the public for purposes of vehicular travel or parking, or upon or within the right-of-way of any road or highway, for forty-eight hours or longer; (B) Three years old, or older; (C) Extensively damaged, such damage including but not limited to any of the following: missing wheels, tires, motor, or transmission; (D) Apparently inoperable; (E) Having a fair market value of one thousand five hundred dollars or less. The sheriff of a county or chief of police of a municipal corporation, township, or township police district, within the sheriff's or chief's respective territorial jurisdiction, or a state highway patrol trooper, upon notification to the sheriff or chief of police of such action, shall order any abandoned junk motor vehicle to be photographed by a law

enforcement officer. The officer shall record the make of motor vehicle, the serial number when available, and shall also detail the damage or missing equipment to substantiate the value of one thousand five hundred dollars or less. The sheriff or chief of police shall thereupon immediately dispose of the abandoned junk motor vehicle to a motor vehicle salvage dealer as defined in section 4738.01 of the Revised Code or a scrap metal processing facility as defined in section 4737.05 of the Revised Code which is under contract to the county, township, or municipal corporation, or to any other facility owned by or under contract with the county, township, or municipal corporation for the destruction of such motor vehicles. The records and photograph relating to the abandoned junk motor vehicle shall be retained by the law enforcement agency ordering the disposition of such vehicle for a period of at least two years. The law enforcement agency shall execute in quadruplicate an affidavit, as prescribed by the registrar of motor vehicles, describing the motor vehicle and the manner in which it was disposed of, and that all requirements of this section have been complied with, and shall sign and file the same with the clerk of courts of the county in which the motor vehicle was abandoned. The clerk of courts shall retain the original of the affidavit for the clerk's files, shall furnish one copy thereof to the registrar, one copy to the motor vehicle salvage dealer or other facility handling the disposal of the vehicle, and one copy to the law enforcement agency ordering the disposal, who shall file such copy with the records and photograph relating to the disposal. Any moneys arising from the disposal of an abandoned junk motor vehicle shall be deposited in the general fund of the county, township, or the municipal corporation, as the case may be. Notwithstanding section 4513.61 of the Revised Code, any motor vehicle meeting the requirements of divisions (C), (D), and (E) of this section which has remained unclaimed by the owner or lienholder for a period of ten days or longer following notifications as provided in section 4513.61 of the Revised Code may be disposed of as provided in this section.

Livingston claims that his 1987 Maxima was improperly designated as an "abandoned junk motor vehicle" and that defendants failed to verify its condition with photographs as required under the statute. Livingston also contends that his vehicle had a market value in excess of $1,500 and that his car was not visibly inoperable.

Livingston's amended complaint included as defendants Cincinnati Mayor Charles Luken, Vice-Mayor Alicia Reese, the City of Cincinnati and the Cincinnati Police Division, former City Manager John Shirey, Chief of Police Thomas Streicher, Police Officer Porter Eubanks, and John Does 1-50, who are unidentified police officers, tow-truck operators, and wrecking-company

employees. Luken and Reese have been dismissed from the action, leaving Appellants Eubanks, Streicher, and Shirey, the City, its Police Division, and John Does 1-50 as defendants in the lawsuit.

Livingston's amended complaint accused the defendants as a group of a wide variety of federal constitutional and Ohio state claims, including: federal due process, Fourth Amendment search and seizure, equal protection and First Amendment retaliation claims; state law claims based on the Ohio constitution's due process and equal protection clauses, state preemption, and conversion; and a claim for declaratory relief under federal and Ohio law. The only claims relevant to this appeal, however, are the district court's denial of judgment on the pleadings on qualified immunity grounds to Appellants Eubanks, Streicher, and Shirey on Livingston's Fourth Amendment unreasonable seizure and First Amendment retaliation claims.

## II.   Factual Allegations Specific To Each Appellant

### A.   Officer Eubanks

Livingston's only factually specific allegation regarding Eubanks is that he is the officer who stickered Livingston's vehicle as "abandoned." Throughout the complaint, however, Livingston lumps Eubanks in with Streicher, Shirey, the City, and the Police Division—without specific factual allegations—as having illegally seized, towed, and destroyed his vehicle.

### B.   Chief Streicher

In addition to the blanket allegation that Streicher, along with several other defendants, was responsible for the illegal seizing, towing, and destroying of his vehicle, Livingston contends that on the day of his vehicle's seizure, Streicher declared its fair market value to be $50. Livingston also alleges that Streicher, among several other defendants, "mocked Plaintiff after the illegal seizing of his property, and illegally destroying his property."

4

### C. City Manager Shirey

As with Eubanks and Streicher, Livingston alleges generally that City Manager Shirey was responsible for the unconstitutional seizing, towing, and destroying of his vehicle, and that he had Livingston's vehicle seized and destroyed in retaliation for Livingston's exercising his First Amendment rights. The only specific allegation relating to Shirey is that, after Livingston's vehicle had been destroyed, he wrote Shirey requesting compensation, and Shirey's office refused the request.

### ANALYSIS

### I. Jurisdiction

Denial of judgment on qualified immunity grounds at any stage of the proceedings is immediately appealable. *See Crawford-El v. Britton*, 523 U.S. 574, 598 n.19 (1998) ("If the district court enters an order denying the defendant's motion for dismissal or summary judgment, the official is entitled to bring an immediate interlocutory appeal of that legal ruling on the immunity question."); *Wallin v. Norman*, 317 F.3d 558, 563 (6th Cir. 2003) (holding that a district court's refusal to address the merits of defendants' motion asserting qualified immunity prior to the close of discovery was "a conclusive determination for the purpose of allowing an interlocutory appeal"). We therefore have the authority to adjudicate this appeal, which was timely filed within 30 days of the district court's order denying qualified immunity.

### II. Standard Of Review And Law Of Qualified Immunity

We review dismissals under Rule 12(b)(6) de novo. *Wallin*, 317 F.3d at 561. When a Rule 12(b)(6) defense of failure to state a claim upon which relief may be granted is raised by a Rule 12(c)

motion for judgment on the pleadings, we apply the standard for a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). A complaint must contain "more than the bare assertion of legal conclusions," and it must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Nonetheless, a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Finally, "[b]ecause the issue of qualified immunity is a legal question, no deference is due the district court's conclusion." *Wallin*, 317 F.3d at 561.

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal quotation omitted). It is an immunity from suit rather than a mere defense to liability. *Id.* Therefore, "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Id.*

"According to the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Sixth Circuit's test for qualified immunity involves a three-step inquiry: 1) "we determine whether a constitutional violation has occurred"; 2) "we determine whether the right that was violated was a clearly established right of which a reasonable

person would have known"; and 3) "we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)); *see Saucier*, 533 U.S. at 201-02; *Feathers*, 319 F.3d at 848. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

### III.   Constitutional Claims On Appeal

Appellants make two basic arguments on appeal: that Livingston fails to state First and Fourth Amendment claims against each individual Appellant, and that, even if his complaint does successfully state such claims, he fails to plead the violation of clearly established federal law so as to overcome Appellants' assertion of qualified immunity.

#### A.   Unreasonable Seizure Claim

A citizen has a Fourth Amendment right to freedom from "unreasonable . . . seizures." U.S. Const. amend. IV. In assessing the reasonableness of a seizure, the court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion." *Autoworld Specialty Cars, Inc. v. United States*, 815 F.2d 385, 388 (6th Cir. 1987) (quoting *United States v. Jacobsen*, 466 U.S. 109, 125 (1984)). The governmental interest at issue in the present case is the abatement of a public nuisance. At the time of the actions complained of here, Ohio Rev. Code § 4513.63 had never been ruled unconstitutional. Assuming the statute's constitutionality, a public official's seizure under the authority of the statute of an automobile that does not meet the statute's requirements for seizure

7

would clearly be unreasonable for Fourth Amendment purposes.

### i.     Officer Eubanks

Livingston's complaint alleges that Eubanks stickered the vehicle as abandoned despite its being clearly operable and obviously worth more than $1,500. It is reasonable to infer that whatever officer affixed the sticker to the car also played a part in identifying it as "abandoned," which, in turn, caused it to be towed and destroyed. Accepting Livingston's factual allegations as true for the purposes of this motion, Eubanks's causing the seizure of a vehicle that did not meet the requirements of § 4513.63–the authority under which he was acting–would constitute an unreasonable seizure and the violation of a clearly established right of which Eubanks, as an officer enforcing the statute, should have known. While more factual development may show that Eubanks's actions did not in fact violate Livingston's Fourth Amendment rights, or, even if they did, were not "objectively unreasonable," we cannot make such a determination at this stage of the litigation. At this point, therefore, Livingston has alleged sufficient facts to overcome Eubanks's assertion of qualified immunity.

### ii.     Chief Streicher

Livingston alleges that Streicher, among several other defendants, "personally, in a wanton and reckless fashion, ordered plaintiff's motor vehicle, towed by defendant John Doe 26 towing company," and that Streicher "caused Plaintiff to be subjected to the deprivation of his constitutional right under the Fourth Amendment to be free from unreasonable searches and seizures." The seizure and destruction of "abandoned" vehicles authorized by § 4513.63 is done under the legal authority of the police chief, here Streicher. Also, Livingston alleges that on or about the day Livingston's vehicle was seized, Streicher claimed that the vehicle's fair market value was $50. Consistent with

these allegations, Livingston may be able to show that Streicher somehow orchestrated the illegal seizure of Livingston's vehicle, or that he knowingly allowed its seizure by his officers in reckless disregard of § 4513.63's requirements. Were either of these eventualities proven to have occurred, Streicher would have violated Livingston's clearly established Fourth Amendment right to be free from unreasonable seizures, and his behavior could be shown to have been objectively unreasonable. The district court's denial of qualified immunity to Streicher on the Fourth Amendment claim was appropriate at this early stage in the litigation.

### iii.    City Manager Shirey

City Manager Shirey is encompassed by the complaint's general allegation that "defendants" had Livingston's vehicle seized, towed, and destroyed in violation of the Fourth Amendment. The complaint also alleges that Livingston sent Shirey a letter requesting compensation for his seized and destroyed vehicle, and that Shirey's office responded four months after the seizure by refusing to compensate him. While these allegations are vague to say the least, they do provide some basis for Livingston's potentially showing that Shirey somehow caused his vehicle to be towed despite its not meeting the statute's criteria for an "abandoned" vehicle. Because it is conceivable that Livingston could present sufficient additional evidence to prove that Shirey acted objectively unreasonably in light of clearly established Fourth Amendment standards, we cannot say that the district court erred in denying Shirey qualified immunity at this stage of the proceedings.

### B.    First Amendment Retaliation Claim

To allege a cause of action for retaliation, a plaintiff must plead facts that would establish: 1) that he was engaged in a constitutionally protected activity; 2) that the defendants' adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing

to engage in that activity; and 3) that the adverse action was motivated at least in part as a response to the exercise of his constitutional rights. *See Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). Livingston contends that defendants seized and destroyed his car in retaliation for Livingston's speaking critically about Cincinnati's public officials on his radio show. Appellants do not dispute that Livingston's speech was constitutionally protected activity, or that the seizing and destroying of his automobile would likely chill a person of ordinary firmness from engaging in that protected activity. Appellants do contend, however, that Livingston has not pled sufficient facts to show that the destruction of his vehicle was improperly motivated by Livingston's speech.

In *Crawford-El v. Britton*, 523 U.S. 574 (1998), the Supreme Court addressed the question of whether an appellate court may impose a heightened burden of proof in unconstitutional motive cases against public officials. The Court viewed this as an impermissible judicial altering of the cause of action, despite the legitimate underlying policy concerns of giving effect to defendants' qualified immunity interest at the earliest possible stage. The *Crawford-El* Court did note, however, that in unconstitutional-motive cases against public officials, the district court "must exercise its discretion in a way that protects the substance of the qualified immunity defense . . . so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Id.* at 597-98. The Court gave as examples of such discretionary behavior a district court's ordering a reply to defendant's answer under Fed. R. Civ. P. 7(a), or its granting a defendant's motion for a more definite statement under Fed. R. Civ. P. 12(e). *Id.* at 598. The Court then noted that if a plaintiff overcomes this initial hurdle, the district court should further use its wide discretion under Fed. R. Civ. P. 26 to fashion the discovery process in a way that best protects the defendant's qualified

immunity privilege. *Id.* In *Goad v. Mitchell*, 297 F.3d 497 (2002), the Sixth Circuit, applying *Crawford-El*, held that it was impermissible in a case not involving improper motive to require a civil rights plaintiff to plead "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Id.* at 501. The *Goad* court did recognize, however, that district courts must exercise their discretion to protect a defendant's qualified immunity, and that in cases of improper motive this could involve requiring that a plaintiff put forth specific, non-conclusory allegations of improper motive in order to survive a motion for dismissal. *Id.* at 504.

Livingston's complaint properly alleges that all three Appellants were involved in having his vehicle illegally seized and destroyed in violation of his Fourth Amendment rights. Livingston also alleges that each Appellant acted in retaliation for Livingston's exercising his First Amendment rights. It is true that the complaint provides little in the way of specific information as to the basis for the retaliation allegation, but we note that the Appellants successfully opposed Livingston's attempt to file a second amended complaint with, presumably, additional allegations of fact. We conclude that the allegations regarding the seizure, when coupled with Livingston's status as a perpetual critic of the City's public officials, are marginally sufficient to state a claim for retaliation against the Appellants. We therefore affirm as well the district court's denial of qualified immunity on the retaliation claim.

Finally, of course, we note that a denial of the defense of qualified immunity at this early stage of the litigation is not dispositive of the issue, and the defense may be raised again at such time as the Appellants have moved for and received a more definite statement of the basis for these claims, or at summary judgment, or at trial.

## CONCLUSION

Accordingly, we **AFFIRM** the judgment of the district court.